## Naulty, Exrx., Appellant, v. Stiteler.

Argued January 6, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles L. Guerin,* for appellant.

*Palmer Watson,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 24, 1941:

This is an appeal from the decision of the court below dismissing a bill in equity to set aside a $4,000.00 inter vivos gift from Thomas Wysham to defendant. Plaintiff is Wysham's executrix. Wysham, who had never married, died on June 22, 1938, aged 52 years, after an illness of several months. He was confined

to the hospital from February 5th to April 2nd, that year, and again from May 29th to June 22nd, the date of his death.

Both plaintiff and defendant had been friends of the decedent for more than a half score of years. On February 4, 1938, just before he went to the hospital, Wysham appointed defendant as a deputy to have access to his safe deposit box. A week later he executed his will naming plaintiff his executrix and bequeathing to her the funds on deposit in the Philadelphia Saving Fund Society. He gave to defendant the contents of his safe deposit box and funds on deposit in the Integrity Trust Company. He bequeathed to a friend, Bertha Burd, the cash on deposit in Gimbel's bank, and he devised his one piece of real estate to his friends, Mr. and Mrs. Harry Ephlin. At the time of his death the funds in the Philadelphia Saving Fund Society amounted to $3,428.80; in the Integrity Trust Company, $2,633.75; and in Gimbel's bank, $575.77. The real estate was encumbered by a mortgage. His only other estate consisted of insurance amounting to $417.13.

On May 23, 1938, between visits to the hospital, Wysham, accompanied by the defendant, was driven to the Philadelphia Saving Fund Society by Bertha Burd. Wysham and defendant entered the bank and notice was given for the withdrawal of $4,000 from his account. The notice of withdrawal was in favor of defendant and bears her endorsement of the receipt of the money by her on June 6th, 1938. After Wysham's death, plaintiff, as executrix, demanded the return of the $4,000.00. A bill in equity was filed, praying that defendant be adjudged to have been a trustee of the sum of $4,000 and asking that she be directed to return this sum to Wysham's estate.

The bill avers that "during the period from April 1, 1938, to June 22, 1938, Wysham did not possess sufficient mental capacity and understanding to transact business or to care for his property; he was unable to

read and was in such a physical and mental condition that he was readily subject to the influence of others." It avers also that the "defendant . . . for upwards of 10 years prior to the death of decedent, was a trusted friend of decedent and by reason thereof, defendant acquired the confidence of said Thomas Wysham and was able to exercise over the said Thomas Wysham complete domination, influence and control."

After hearings the chancellor made certain findings of fact. Among these findings were: "Defendant had cared for Wysham's mother for a year prior to her death, which occurred a year before his own. She had also taken care of Wysham himself for a year and two months before his death. . . . It was the understanding between the defendant and Wysham that so much as might be necessary of the $4,000 given to the former should be used to pay existing medical expenses and hospital and medical fees which might be contracted in relation to Wysham's current illness. Defendant did offer to pay the doctor's bill. If the gift be sustained, the plaintiff receives $3,428.80 from the Philadelphia Saving Fund Society account, plus $417.13 from life insurance policies; a total of $3,845.93. The defendant receives the Integrity Trust Company account of $2,633.75, plus the gift of $4,000; or a total of $6,633.75—subject to the payment of the debts as noted in the [foregoing] finding of fact. If the gift be set aside, the plaintiff will receive $7,845.93, and the defendant $2,633.75."

In his discussion of this case the chancellor said of the attentions paid the deceased by both plaintiff and defendant: "During his stay at the hospital, and the interval between the two stays, the attention of the two ladies to him was most assiduous. Both visited him daily; when his increasing blindness required it, they fed him." He added: "If any inference of undue influence is to be drawn from this continual kindness the offense can equally be charged to both of them. . . . In our opinion the inference of undue influence cannot

be drawn from kindly care and solicitous attention. Legitimate family and social relations are not banned even though the provisions of a will are thereby influenced and affected."

The chancellor also pointed out that there was competent medical testimony and testimony by Wysham's nurse that he possessed mental capacity when he signed the order for $4,000.00. The order was made out by Wysham himself and the payee's name and the amount are in the same handwriting as Wysham's signature. The medical doctor who witnessed the $4,000 order said he did so when Wysham asked him if he "would be kind enough to witness this legal paper." The man in charge of the safe deposit department of the Integrity Trust Company testified as to Wysham's mental condition as follows: "He knew exactly what he was doing." The chancellor pointed out that no witnesses were called by plaintiff to testify as to the mental feebleness of decedent.

The court concluded as a matter of law that "the presumption that the donor had mental capacity has not been rebutted." The court also concluded that "defendant did not stand in a confidential relationship to the donor" but that, even if she did, the burden of proof which would then rest upon her had been satisfied.

In its decree dismissing the bill the court directed that out of the $4,000 in question the defendant should pay "bills for medical attendance owed by Wysham on June 6, 1938, and the medical expenses and fees arising from his last illness."

After argument on the exceptions filed to the decree nisi, the court in banc upheld the findings of fact and the conclusions of law of the chancellor.

The findings of fact are all well supported by proof and the conclusions of law are correct. "It must be thoroughly understood that, in cases of this character, the findings of the chancellor supported by the court in banc must be considered just as binding on appellate

courts as the verdict of a jury. Of course, if there is no evidence to support them or if it appears from the record that there is a capricious disbelief of evidence then the findings are worthless"; *Pusey's Est.*, 321 Pa. 248, 184 A. 844; and *Schwartz's Est.*, 340 Pa. 170, 16 A. (2d) 374.

The decree is affirmed, at appellant's cost.