Mezza *v.* Beiletti et ux., Appellants.

214

Argued April 21, 1947.  Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Carroll Caruthers,* for appellants.

*Robert W. Smith,* with him *Robert D. Noel* and *Smith, Best & Horn,* for appellee.

OPINION BY RENO, J., July 17, 1947:

This is an appeal from a decree requiring appellants, husband and wife, to perform specifically a parol contract for the conveyance of a house and lot which they hold as tenants by the entireties.

We are bound by the chancellor's findings of fact approved by the court en banc to the extent, but only to the extent, that they are supported by the evidence. *Naulty v. Stiteler,* 341 Pa. 234, 19 A. 2d 141. Upon a review of the record we find that an essential and material finding is without evidential support, and for the rectification of that error the case will be remanded for a further hearing.

The evidence sustains the findings that a parol contract was entered into, that possession was given and taken under it, that improvements were made pursuant to it, and that part of the purchase price was paid in accordance with it. There is not, as we shall presently demonstrate, adequate proof that the *entire* purchase price was paid.

That there was a parol contract is not in dispute, and the controversy is confined to its terms.[1] Plaintiff alleged that about March 16, 1940, both defendants orally agreed to convey the premises to him for $1800, payable in monthly instalments of $25, without interest, and that plaintiff should be relieved from making the payments during periods of illness or sickness.[2] Defendants admitted in their answer that they had orally agreed to sell the house and lot, and Beiletti testified that he and his wife had agreed to sell for the price of $1800 payable in instalments of $25 each. They also alleged that the agreement provided that they should have the right to reserve out of the land a right of way for an automobile drive *to be selected by them.* The court sustained, upon sufficient evidence, plaintiff's ver-

[1] Since the making of a parol contract was admitted, appellants' belated point that the contract was void under the Statute of Frauds has not been considered. *Zlotziver v. Zlotziver,* 355 Pa. 299, 49 A. 2d 779.

[2] Appellants' contention that this provision introduced an uncertain time for performance into the agreement need not be considered. The fact is that no payments were postponed by reason of illness or unemployment, and the chancellor found that the payments were made within the six-year period contemplated by the agreement.

sion of the contract, and decreed specific performance of it.

Its decree provided "for an automobile drive over and through the said lot of ground, as now in use by the grantors [defendants], as a means of ingress and egress to and from their other lands, to be used in common with the plaintiff." This was based upon evidence which proved that at the time the parol agreement was made the driveway described in the decree was an easement, visible upon the ground and used by the both parties. The driveway was in effect selected by defendants, and they have no cause for complaint.[3]

On the question of possession, the chancellor found, upon an admission in defendants' answer, that when the parol agreement was made plaintiff was occupying part of the premises as defendants' tenant, and that after it was made "the defendants notified their tenant, occupying that portion of the premises not occupied by the plaintiff, that the premises had been sold to the plaintiff and for him to thereafter pay the monthly installments of rent, . . . to the plaintiff, and this the tenant did." This satisfied the rule requiring delivery of possession pursuant to a parol contract; for ". . . where the purchaser is in possession of the premises as a tenant, and there is a cotenant in possession with the purchaser, and the landlord directs the cotenant to pay the rent to the purchasing tenant as owner, and the tenant so pays the rent, this will effect such a change of possession that, with the payment in part of the purchase-price, will enable the vendee to enforce in equity specific performance of the contract of sale": *Tressler's Estate*, 66 Pa. Superior Ct. 547, 551.

---

[3] Relying upon *Farrell v. Bowker*, 278 Pa. 323, 123 A. 305, appellants contended that the provision for a driveway *to be selected by them* rendered the agreement unenforceable because a further meeting of the minds of the parties was necessary. But the provision is appellants' version of the agreement, and is not sustained by the evidence or the findings. Appellants' mere assertion could not import an uncertainty into the agreement.

As to the improvements, the court found, and the evidence supports the finding, that plaintiff had graded "the right of way so as to conform to the new grade of the public highway, digging, covering the road with cinders, and leveling up the spur, which was the way by which the plaintiff, as well as the defendants, could get to and from the improved road." Defendants' contention is that plaintiff has a remedy available in an action for damages against the public authority which relocated the public road, and therefore can be compensated in damages for his improvements. This would not be an adequate answer, if the making of improvements were essential to support the decree. However it has long been held that a vendee who has paid the purchase price and is in possession is entitled to specific performance of a parol contract even though he has made no improvements. *Jamison v. Dimock*, 95 Pa. 52. The rule is otherwise as to parol *gifts* of land, and the cases relied upon by defendants are in that category.

This brings us to the crucial question. The court found that plaintiff "paid to the defendant directly of the consideration moneys the sum of $765.00, and, in addition thereto, the defendants, for the account of the plaintiff . . . collected from the Commonwealth, for damages done to the property in question, after the making of the agreement of sale by reason of an appropriation in the re-location of Route No. 66, the sum of $1140.00, making in all $1905.00—$105.00 in excess of the consideration to be paid under the terms of the parol agreement . . ." The evidence supports the finding of the direct payments in cash of $765. It does not support the item of $1140. To clarify that issue a statement of further facts is necessary.

During July, 1940, preliminary surveys of the public road abutting the premises were made preparatory to its relocation. Such relocation, it was believed, would take a part of the premises which defendants had agreed to sell to plaintiff, and plaintiff and the husband-defendant

executed a written agreement which substantially incorporated the terms of the oral agreement and expressly provided for the application of the damages collected for the relocation to the purchase price when they were paid by the Department of Highways. The wife-defendant did not sign the written agreement although she had promised to do so. After the agreement was executed the wife received the monthly payments on account of the purchase price from plaintiff and executed receipts therefor, the first being signed by her own name and the remainder signed in her husband's name. The written contract provided, inter alia: "It is understood and agreed that any or all damages done to this property the amount received up to the amount owing by party of the second part [plaintiff] to parties of the first part [defendants], and if any more is received to go to party of the second part, that is the damage by change to Route 66 on Paul Avenue by State Highway Dept. or Westmoreland County, any damage to this property received on account of said damages to go to parties of the first part up to the balance owing on this property."

The finding that defendants collected for plaintiff's account damages in the sum of $1140 is founded upon an alleged admission by defendants of an averment in plaintiff's bill. The averment is: "Shortly after October 31, 1942, *the plaintiff was advised* that the defendants had settled their claim for damages . . . and *the plaintiff having made inquiry learned* that on July 14, 1942, such settlement had been made, and the defendants had received from the Commonwealth the sum of $1140.00 . . ." (Emphasis added). To this the defendants answered: "It is admitted that shortly after October 31, 1942, the defendants settled their claim for damages by reason of the relocation and construction of State Highway Route No. 66 with the Commonwealth of Pennsylvania and that they received certain moneys, as appears by the record in said settlement proceedings, but that said moneys included damages not only to the property

in question but damages to other properties owned by the said defendants." This the chancellor construed as an admission that defendants had received $1140 for the damages to the property covered by the parol agreement. He also rejected an offer by defendants to prove the amount of damages paid by the Commonwealth, and the portion allocable to the premises purchased by plaintiff.

This was error. Plaintiff did not aver that defendants had received $1140. He averred only that he had been *advised* and that he had *learned* that the defendants had received that sum. Defendants' failure to deny specifically plaintiff's averment was only an admission that plaintiff had been so *advised* and had *learned* a certain fact. It was not an admission that the fact itself was true. *Dalmas v. Philipsburg and Susquehanna Valley R. R. Co.,* 254 Pa. 9, 98 A. 796; *Munhall v. Travelers Ins. Co.,* 300 Pa. 327, 150 A. 645.

Whether the wife was bound by the written agreement poses a problem which cannot, we think, be wholly answered by the receipts which she signed after its execution. Her signatures to the receipts were equivocal; they might as well indicate her assent to the parol agreement as to the written contract. The fact that the receipts were signed by her after the written agreement was made has no significance; for by both the written and the parol agreement the monthly instalment was $25, and her signatures evidence only her obligation to accept the monthly instalments under either agreement. They are not evidence of her recognition or ratification of the term of the written contract under which the damages recovered for the relocation of the road are applicable to the reduction of the purchase price.

The solution of the problem must be found by consulting other factors. There is evidence which may sustain the statement in the opinion of the court en banc that, "prior to" the preparation of the written agreement "the defendants (husband and wife) agreed with

him [plaintiff] that the damages occasioned . . . should be credited on the purchase money," but there is no finding of fact to that effect. If she orally agreed to that stipulation, was it the intention of the parties that the oral agreement should become immediately binding, or binding only when reduced to writing and signed by all the parties? It is well established that where the parties intend not to be bound until a written instrument has been prepared and signed, no contract is formed by the verbal understanding. *Wilson v. Pennsy Coal Co.*, 269 Pa. 127, 112 A. 135. But where the parties so intend, an oral agreement may be binding even though they agreed that it should be later reduced to writing. *Taylor v. Stanley Co.*, 305 Pa. 546, 158 A. 157. These principles, we think, should furnish the standard by which the wife's assent to the written contract should be determined.

Appellee makes the point, and it possesses merit, that apart from the written agreement he is entitled to the damages. "In Pennsylvania when a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold, and the purchaser as a trustee for the vendor of the purchase money. So much is the vendee considered, in contemplation of equity, as actually seized of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance; and he will be entitled to any benefit which may accrue to it in the interval; because by the contract, he is the owner of the premises, to every intent and purpose, in equity": *Phila. v. Myers*, 102 Pa. Superior Ct. 424, 431, 157 A. 13. "A person who, as the holder of a title to property in which another has the beneficial interest, receives a direct product of the property, income or other proceeds from it, is under a duty to account to the other": Restatement, Restitution, §125. "Thus it [§125] is applicable to a person who, having contracted to sell land which is taken under eminent domain proceedings, receives payment therefor

from the State . . .": Id., Comment *a*. Accordingly, a vendee of land through which a road was opened subsequent to his purchase was permitted to recover the damages from his vendor to whom they were assessed and who received them from the county treasurer. *Meginnis v. Nunamaker,* 64 Pa. 374. Cf. *Christian Moerlein Brewing Co. v. Rusch,* 272 Pa. 181, 116 A. 145. This proposition does not appear to have been presented to the court below; at least it has not been pleaded; and should appellee wish to stand upon it consideration should be given to the advisability of amending the bill.

The other questions raised at the argument do not require discussion.

Assignments of error Nos. 1, 3, 5, 7, 18, 20, 27 and 28 are sustained, and the others are overruled. The fifth assignment has been sustained so that the court below will be free to consider and decide the question of fact relating to the wife's alleged oral promise to allow the damages to be deducted from the purchase price.

The decree is reversed, and the record is remitted to the court below for further proceedings consistent with this opinion including a hearing for the purpose of taking further testimony, but limited to the determination of the question whether the consideration has been paid in full. The costs, including the costs of this appeal, to be allocated by the court below.