**Granville H. MEIER**

v.

**The TEXAS COMPANY (two cases).**

**Civ. A. No. 17338, Admiralty No. 297 of 1954.**

United States District Court
E. D. Pennsylvania.

May 13, 1958.

Freedman, Landy & Lorry, by Benjamin Kuby, Philadelphia, Pa., for plaintiff-libellant.

Krusen, Evans & Shaw, by Mark D. Alspach, Philadelphia, Pa., for defendant-respondent.

GANEY, Chief Judge.

This matter arises on the petition of Granville H. Meier, plaintiff-libellant, to vacate and set aside voluntary dismissals of a civil action for damages under the Jones Act, 46 U.S.C.A. § 688, and a suit in admiralty for wages, maintenance and cure, and to reinstate the action and suit upon the trial lists. The issue presented is whether a settlement of Meier's claims had been consummated or whether it had not, and if it had, may the settlement be set aside because (a) the release involved was executed under a mutual mistake of fact by both parties, or (b) the consideration for the release was inadequate.

Meier was employed as a utility man aboard the S.S. Virginia, owned and operated by The Texas Company ("Texaco"), defendant-respondent herein. On January 21, 1954, while the vessel was off the coast of Venezuela, and Meier was carrying ice trays into the meat box, the roll of the vessel caused the fastener, which held the door open, to become disengaged. The free door swung around and struck Meier in the back and momentarily wedged the ice trays between the door frame and his chest. He reported the event to the master of the vessel and continued to work the remainder of the day as well as the two days following. On the third day he developed a fever and was confined to bed in the hospital section of the vessel for the remainder of the voyage. When the vessel arrived in Philadelphia on January 27, 1954, he was furnished with a hospital certificate by the master. After being paid his wages, he proceeded to his home in Philadelphia. On the following day he sought the service of a local law firm and then reported to the United States Public Health Station in Philadelphia. There his injury was diagnosed as "contusion of the chest and upper arms." He was treated as an outpatient for eleven days, and on February 8, 1954, the Public Health Service declared him fit for duty and discharged him as a patient. Eleven days later, at his counsel's request, Meier was examined by Dr. Jacob Krouse, an orthopedist. While Doctor Krouse could find nothing wrong with Meier orthopedically, he noted in his report of February 20, 1954, that the patient did have "some form of generalized illness", as to the significance of which he did not feel qualified to express an opinion. In the report, therefore, he suggested to Meier's counsel that Meier be sent to an internist "for the diagnosis, prognosis and possible medical-legal significance of Meier's physical difficulties." On March 18, 1954, Meier returned to employment at sea.

By letter dated March 26, 1954, to the claims department of Texaco, Meier's counsel sought to have any claim which Meier might have against it settled amicably. On April 15, 1954, local counsel was retained to handle the matter on behalf of Texaco, and they so notified Meier's counsel by letter dated April 19, 1954. Receipt of this letter was acknowledged with a reminder that Meier's counsel would make him available for medical examination when he returned from sea.

When Meier returned, his counsel referred him to Dr. Eugene M. Schloss, an internist. The medical report dated July 12, 1954, after setting forth the facts of the accident of January 21, 1954, as related by the patient, and a brief history since that time, stated:

> "However, the pain at the lower end of the sternum and at a corresponding point in the back (lower dorsal-upper lumbar area) persisted, with accentuation on deep breathing, sneezing, bending and stooping. Weight, which prior to the accident was regularly 148 to 150, gradually dropped to the present level of 132½ pounds; there was progressive decrease in strength correspondingly. Since the time of the accident there has also been an increasing nervousness, manifested by tremors of the hands and head, anxiety and insomnia; as a result of the insomnia, the patient has been suffering great fatigability.

" * * * The fatigability and loss of strength may be related to either inadequate sleep or the weight loss or both, or may be a part of another yet undisclosed abnormality."

The report concluded with the following paragraph:

"While it must be conceded that intensive study of this patient might disclose some organic basis for the patient's symptoms, it is my opinion that such thorough investigation is not warranted at this time. A trial of mild sedation may well constitute the first attempt at therapy; if this is not successful, psychiatric opinion should be sought. However, should the patient's condition deteriorate further or should additional physical signs of disease supervene, re-evaluation after further examinations and observation would be indicated."[1]

On July 20, 1954, the action and suit here involved were instituted. Seven months later counsel for Texaco requested opposing counsel to have Meier available for discovery purposes. In response to this request, Meier's counsel, by letter dated March 1, 1955, wrote:

"In reference to your request that Mr. Meier be made available for discovery purposes, please be advised that on numerous occasions in the past we have advised your office that Mr. Meier was available for both a medical examination and a pre-trial oral examination at your pleasure. However, these requests have never been followed through. We believe that Meier is presently ashore and available for examination.

"In the meanwhile we shall be pleased to discuss the amicable disposition of this matter, if you so desire."

On April 19, 1955, counsel for Texaco was notified by Meier's counsel that Meier was willing to accept $600 in settlement of his claims. The following day counsel for Texaco requested authority from their client to consummate the settlement for the sum stated by Meier's counsel.

By letter dated May 10, 1955, counsel for Texaco notified opposing counsel that they had obtained authority to settle the claims. The letter of transmittal contained four typewritten releases, one original and three carbon copies. In pertinent part the releases provide as follows:

" * * * That I, Granville H. Meier, in consideration of the sum of Six Hundred Dollars ($600.00) to me in hand paid, receipt of which consideration I do hereby acknowledge, here * * * released * * * the Steamship 'Virginia', and her owners, operators, and The Texas Company, * * * from all claims and demands * * * whether known or unknown, * * * of whatsoever nature * * * I now have, ever had, or may have, arising from all injuries and illnesses, and particularly, but not in limitation of any of the general terms of this release, for all injuries and illnesses, and all consequences thereof, whether known or unknown, which I allege were sustained by me on or about January 21, 1954, * * * at which time I was carrying ice trays into the meat box door, as a result of which I sustained injuries to my back, chest, ribs, arms and shoulders, for which I received treatments from various physicians and hospitals, including the United States Public Health Service Station, Philadelphia.

"I sign this release, after consultation with my attorneys, * * * with full knowledge that I am giving up all my rights against the said Steamship 'Virginia', and The Texas

---

1. Counsel for Texaco did not see this report or Doctor Krouse's report of February 20, 1954, until they had been made part of an affidavit filed on June 14, 1957 in support of the petition to set aside the voluntary dismissals.

Company by reason of the premises herein set forth, and I intend myself to be bound hereby.

."I also sign this release with the full understanding and agreement that any further medical or surgical expenses incurred by me as a result of the beforementioned accident and injuries shall be at my own expense.

"And further, in consideration of the above-mentioned payment, I hereby consent and agree that the action instituted on my behalf in the District Court of the United States for the Eastern District of Pennsylvania, against The Texas Company, which action is docketed as Civil Action No. 17,338, shall be forthwith marked 'dismissed, with prejudice', and I hereby consent and agree that the action * * * which is docketed as No. 297 of 1954 in Admiralty, shall be forthwith marked 'settled, discontinued and ended.'

"In Witness Whereof, I have hereunto set my hand and seal, after reading this receipt and full release and intending to be bound hereby, this ——— day of ——— A.D. 1955."

On May 12, 1955, Meier signed the releases in the office of his counsel. Despite the recitation of the receipt of $600 and consideration of payment in the releases, Meier never received any money for signing them. These releases, along with a stipulation for dismissals of the civil action and an order of discontinuance of the admiralty suit prepared by Meier's counsel, were mailed to counsel for Texaco. The letter accompanying these documents requested that the check for $600 be made payable solely to the law firm as attorneys for Meier.

By letter of May 19, 1955, counsel for Texaco sent the check for $600 to Meier's counsel. It was a check of the marine division of Texaco, dated May 16, 1955, drawn on The Chase National Bank of the City of New York, signed by the assistant treasurer of Texaco, and made payable to Meier and his attorneys jointly. On the left-hand margin of the check

appeared the following legend: "Endorsement of this check is acknowledgment of payment in full of items on statement attached. Endorse check exactly as drawn." The statement attached read:

"To full, final and complete settlement of any and all claims for illness and/or injury, particularly alleged injury reported on or about January 21, 1954, while employed aboard S.S. Virginia; as agreed: $600.00

"Notice: This check is tendered in full payment of item as stated above. If correct, detatch check, otherwise return it to J. P. McKenna, Asst. Treasurer, The Texas Company, 135 E. 42nd St., New York 17, N. Y. with full explanation * * *."

The letter accompanying the check and statement stated: "We enclose herewith check in the amount of $600 in full and final settlement of the above matter."

On the same day the letter was mailed, Meier, after having stayed at his home in Philadelphia, shipped out as a member of the crew of the S.S. Trembles Ford at Marcus Hook, Pa. The voyage lasted eight days and ended in a port in Texas. Therefore when the check was received by it, Meier's counsel was unable to notify Meier in time for him to endorse the check. For this reason his counsel held it for safekeeping until he returned. In the meantime, on May 27, 1955, counsel for Texaco filed the stipulation of dismissal and order of discontinuance with the Clerk of this Court. On May 30, 1955, at a port in Texas, Meier became a member of the crew of the U.S.N.S. Mission Los Angeles. About three months later while Meier was at sea, counsel for Texaco was informed by Meier's counsel as to why the check had not been negotiated, and also that it could not be endorsed until after he had returned from sea.

On September 6, 1955, Meier returned after serving aboard the U.S.N.S. Mission Los Angeles. At the time he complained of a progressive weakening of his legs and lower body. On advice of

the United States Public Health Service, he entered the Public Health Service Hospital in Baltimore, Md. There his condition was diagnosed as being caused by an unclassified demyelinating disease, and he was pronounced "not fit for duty." After being placed under observation and given a thorough physical examination, he was released from the hospital as an outpatient on October 20, 1955.

Subsequently Meier returned to Philadelphia and informed his counsel of his physical condition and of his refusal to endorse the check. On November 21, 1955, after having checked the hospital records, Meier's counsel sent the following letter to counsel for Texaco:

"When our client signed the release in the above entitled matter he believed that his injuries were of a minor nature and that he would have no future disability. * * *

"We are now instructed to advise that our client has refused to accept the check in payment and that he refuses to consummate the settlement because he has ascertained that he is suffering from a condition which he did not anticipate or consider when he signed the releases. It appears now that he is afflicted with a permanent and totally disabling condition which he did not know about until after he signed the release.

"Accordingly, we return your check and request that you return to us the executed releases so that we may continue with the litigation previously instituted on behalf of Mr. Meier.

"In view of these vastly altered circumstances, we also request that you join with us in setting aside the order of dismissal which you have filed. * * *"

Since counsel for Texaco did not accede to the requests, the petition to set aside the voluntary dismissals was filed on January 12, 1956. Affidavits setting forth the factual background in support of their respective contentions have been filed by counsel for Texaco on February 13, 1956, and July 11, 1957, and by counsel for Meier on June 14, 1957, and April 16, 1958.

Meier contends that it was permissible for him to withdraw the releases prior to the consummation of the settlement of his claims. To the contrary Texaco maintains that both parties, acting through their counsel, entered into a legally binding bilateral contract of compromise and settlement within the procedural framework followed in innumerable past dealings between counsel, and that Meier's only claim is for the $600.

Most contracts require preliminary negotiations. These preliminaries are not to be confused with the ultimate contract itself. See Restatement, Contracts, § 12, comment c. And although the parties may enter into a contract at some stage of their negotiations, the terms of that contract can subsequently be changed by tacit consent of the parties. 3 Corbin on Contracts (1951) § 564, pp. 172–173. In the matters before us Meier, when unaware that he was suffering from an affliction of his spinal cord that would ultimately progress to the point of disabling him, desired payment of at least $600 in return for the relinquishment of his claims against Texaco. The latter, of course, would not pay that sum unless it obtained a general release signed by Meier. His willingness to accept $600 was communicated to counsel for Texaco, which obtained authority to make the promise that Texaco would pay the $600 for a signed release. In other words there was an exchange of promises—with no date set for the time of performance. True it is that upon the exchange of promises, a bilateral contract came into existence. But as Professor Corbin states in his treatise on contracts: " * * * in most bilateral contracts each promisor bargains for performance as well as for promise, that the agreement is for an exchange of performances as well as an exchange of promises." [2] Prior to Meier's signing

2. 3 Corbin on Contracts (1951) § 654, p. 611.

of the release, the contract between the parties was not an exception to the rule. They did not bargain solely for the exchange of promises; they sought, in addition, reciprocal performances of acts promised. These performances were the concurrent conditions of the reciprocal duties of the parties. The duty of each party's performance was conditioned on a tender by the other party of the return performance in execution of a simultaneous exchange. See 3 Corbin on Contracts (1951) § 656; Restatement, Contracts, § 267(c).

However, when Meier signed the releases, he or his counsel anticipated that payment would be made subsequent to the signing. On May 14, 1955, as has been indicated, counsel for Meier enclosed the releases and stipulations to dismiss with the instructions to make the check payable to them alone as attorneys. On May 19, 1955, as likewise has been indicated, the check in the sum of $600, the consideration for the releases, was made payable to Granville H. Meier and his attorneys, Freedman, Landy and Lorry. This, we think, indicated an intention on the part of Texaco to require the endorsement of Granville H. Meier as a condition precedent to the closing out of the transaction and in order to make payment complete.

While, as has been indicated in the affidavits, certain practices prevail in the City of Philadelphia with respect to the exchange of releases and the payment by check, the acceptance and the receipt of the check may be tantamount to payment by the employer where the check is made payable to counsel, but here we feel that naming Meier as a payee in the check created an entirely different situation, and, as heretofore referred to, indicated a specific intent on the part of Texaco to have Meier's signature on the check.

The receipt and retention of the check by Meier's counsel, even for a period as here of seven months, did not amount to payment, the reciprocal act for which Meier bargained. The law of Pennsylvania, New York and most other

states is that where a check is received by the payee, there is a presumption, in the absence of an agreement to the contrary, that it was received as a conditional payment until it is honored and paid. Diskin v. City of Philadelphia, Police Pension Fund Ass'n, 1951, 367 Pa. 273, 80 A.2d 850; Wilson v. United States, D.C.W.D.Pa.1956, 144 F.Supp. 851; Reitz v. Krystofowicz, 166 Misc. 814, 1938, 4 N.Y.S.2d 410; 40 Am.Jur., Payment, § 72; 70 C.J.S. Payment §§ 24, 105. However, since here there was no agreement by the payee that would in any wise indicate payment and, further, since mere acceptance of a check does not, in the absence of such an agreement or of circumstances from which such agreement is necessarily inferred, constitute payment of an obligation, it cannot be said that there was payment, inasmuch as the circumstances here would plainly indicate payment was not to be inferred until the endorsement of the check by Meier. Mittry Bros. Const. Co. v. United States, 9 Cir., 75 F.2d 79, 82.

Accordingly, the petition to set aside the voluntary dismissal and to restore the action to the trial list is granted.