**MAIN LINE THEATRES, INC.**

v.

**PARAMOUNT FILM DISTRIBUTING CORPORATION et al.**

**309 DRIVE-IN CORPORATION**

v.

**PARAMOUNT FILM DISTRIBUTING CORPORATION et al.**

Civ. A. Nos. 24983, 26409.

United States District Court
E. D. Pennsylvania.
Nov. 10, 1960.

Harry Norman Ball, Philadelphia, Pa., for plaintiffs.

W. Bradley Ward, Louis J. Goffman, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

These treble-damage, private, anti-trust cases are before the court on defendants' petitions to have them marked dismissed with prejudice on the basis of alleged settlements effected as the result of negotiations between counsel. The record makes clear that settlement discussions were carried on in these two cases as part of negotiations contemplating the settlement of thirteen treble-damage, private, anti-trust cases pending in this court and involving similar issues.[1] The first of these cases listed for trial was Colonial Amusement Company v. Columbia Pictures, et al., Civil Action No. 19288, and discussions as to settlement of all thirteen cases were carried on at pretrial and settlement conferences in that case.

The court and counsel agreed in the early stages of the settlement negotiations that each case would be considered on an individual basis so that there would be no sacrifice of the legitimate claims of some plaintiffs for others, even though defendants might not agree to settle any of such cases until after the trial of the Colonial case, unless a substantial number of these thirteen cases involving similar issues were settled.[2] Counsel for plaintiffs put a specific settlement proposal on each case (N.T. 20).

1. The eleven other cases are: Colonial Amusement Company v. Columbia Pictures Corporation et al., Civil Action No. 19288; Colonial Amusement Company v. Columbia Pictures Corporation et al., Civil Action No. 19787; Raymond Schwartz v. Columbia Pictures Corporation et al., Civil Action No. 19809; Lincoln Drive-In Corp. v. Paramount Film Distributing Corporation et al., Civil Action No. 25053; Harry L. Dembow et al. v. Columbia Pictures Corporation et al., Civil Action No. 22116; Samuel Dembow and Joseph Dembow v. Columbia Pictures Corporation et al., Civil Action No. 22117; Reo Amusement Company v. Columbia Pictures Corporation et al., Civil Action No. 19325; Reo Amusement Company v. Paramount Film Distributing Corporation et al., Civil Action No. 24026; Beach Theatre, Inc. v. Paramount Film Distributing Corporation et al., Civil Action No. 25010; Atlantic Theatres, Inc. v. Columbia Pictures Corporation et al., Civil Action No. 21352; Atlantic Theatres, Inc. v. Columbia Pictures Corporation et al., Civil Action No. 21353.

2. See page 64 of Document No. 79 of Civil Action No. 19288 and third sentence of second paragraph of Memorandum

Counsel who entered his appearance for plaintiffs in these cases was authorized to represent plaintiffs in these cases until late August 1960. The authorized officer of the plaintiffs in the above-captioned cases stated to such counsel for plaintiffs in these cases no later than May 20, 1960, that plaintiffs were willing to settle both cases for a total of $10,000 [3] (pages 8, 10, 40 and 43 of Document No. 79 in Civil Action No. 19288 and paragraph 2 of Answer to Motions, being Document No. 19 in Civil Action No. 24983). On or before May 23, 1960, as pointed out in more detail below, defendants notified plaintiffs' counsel that the $10,000 for these two cases was acceptable and the customary release used in cases such as these were forwarded to plaintiffs' counsel. On May 26, this authorized officer of plaintiffs was notified of the acceptance by defendants of the $10,000 settlement and he stated that the first 2½ lines of Section 3 of the Release (see Exhibit A to the Petition) were unacceptable.[4] This is the only part of the release which was objectionable (N.T. 56, 97–99). However, defendants have agreed to eliminate this language from the release (N.T. 209) and this is also the only portion of the release which is objectionable to plaintiffs' subsequent vendees (N.T. 141 & 172).[5]

The Colonial case was scheduled for trial to a jury on May 16, 1960, and the trial was deferred until May 23 (selection of the jury to be, and was, completed on Friday, May 20), when it appeared that settlement of several of the thirteen cases was imminent. During the week of May 16, it became clear that three of the cases would not be settled [6] and the parties continued negotiations for settlement of the remaining ten cases, including the above-captioned cases. As stated at page 2 of defendants' brief:

> "Counsel for defendants made it clear to [counsel for plaintiffs] and to the Court that since each of the ten cases involved a key run problem, the defendants would not settle one case without settling all ten. The reason was that to settle one case would merely postpone the resolution of the economic problem that was raised by this group of cases."

However, neither plaintiffs nor their counsel ever made settlement of these two cases (as opposed to the Colonial

---

For Counsel of May 11 (C–2). In the memorandum from the Chief Judge dated May 9, 1960, which was read to counsel between May 9 and May 20, 1960, as stated at page 64, the undesirability of any "package" settlements where "one firm (settles) one case if the other firm settles another" was discussed "Deploring any such situation and (insisting) that each individual case be analyzed on its own merits" were the words of that memo.

3. The only evidence on the point indicates that $5,000 was allocated to each of these cases (N.T. 201). Since the same family owned both plaintiffs in May 1960, it is clear that the way the $10,000 would be divided would not be material to the owners.

4. The settlement contract was complete by May 23, when counsel, being authorized to represent their clients in these cases, had come to an agreement. In any event, plaintiffs' authorized officer had agreed to settle these cases for $10,000 and it was too late for him to withdraw after he was notified by his lawyer on May 26 that this figure had been accepted by defendants. Even if defendants tendered an improper release, this was not a counter-offer, as contended by plaintiffs, since settlement had been accomplished and plaintiffs' remedy was to insist on a proper release. See pages 317 and 318 of 189 F. Supp., below.

5. Also, the settlement achieved in May and communicated to plaintiffs no later than May 26, is binding on plaintiffs because the first 2½ lines of Section 3, as interpreted by defendants, is normal, reasonable language for such a release under all the evidences in this record (eight other exhibitor plaintiffs have signed such a release and it does not preclude plaintiffs from seeking a different "availability" if there is any change in circumstances, such as the playing position of the Philadelphia theatres—N.T. 53–54, 59, 211; cf. p. 31 of Document No. 79 in C.A. 19288).

6. The last three cases listed in footnote 1, which concern theatres located in New Jersey.

case, C.A. 19288) contingent on the settlement of the other eight cases and, as stated above, the understanding of counsel and the court was that each plaintiff was to be dealt with separately and on the basis of its own individual interest. On May 23 the trial judge was advised that settlement had been reached and the jury drawn to try Civil Action No. 19288 was discharged. Although it is not necessary to decide exactly what the total understanding reached on May 23 was, it is clear that defendants had agreed to the following:

(a) the Colonial case (C.A. 19288) would not be tried and was settled;

(b) all ten cases, with the possible exception of the Reo and the Dembow cases, were settled [7] (see page 25 of Document No. 79 in C.A. 19288); and

(c) the defendants' counsel were willing to undertake the raising of an additional sum as counsel fee which would permit settlement of the excepted cases mentioned in (b) above with the full approval of Messrs. Wax and Dembow (pp. 16 and 26–27 of Document No. 79 in Civil Action No. 19288), even though defend-

ants took the position that the Reo and Dembow cases had actually been settled.

 Under the above facts, it is clear that plaintiffs' counsel had the actual authority [8] to settle these two cases for $10,000 and did so settle them in May 1960 before plaintiffs had made any sale or lease of these theatres.

 The Pennsylvania appellate courts have consistently held that where a definite oral contract is made, it is effective when orally accepted and the parties will be required to execute any written documents contemplated as necessary to carry out the terms of the oral agreement. See Taylor v. Stanley Co. of America, 1932, 305 Pa. 546, 553, 158 A. 157; Ketchum v. Conneaut Lake Co., 1932, 309 Pa. 224, 229, 163 A. 534; Mezza v. Beiletti et ux., 1947, 161 Pa.Super. 213, 220, 53 A.2d 835; cf. Commercial Cas. Ins. Co. v. Martin, 1934, 316 Pa. 479, 480, 175 A. 489.[9] This record makes clear that there was an oral agreement to settle these two cases for $5,000 each, or a total of $10,000, which was completed in May 1960. In pursuance of this contract, defendants are required to pay this sum

---

7. The hearing judge does not wish to indicate by this that there was no settlement of these cases as of this date, as he would quite possibly find that these cases were settled if this were necessary for the decision of the matter before the court (see pp. 34 & 59 of Document No. 79 in C.A. 19288). Since this is not necessary and because these cases have been definitely settled as of this date, the record need not be analyzed in detail as to these four cases.

8. See In re Gsand, 3 Cir., 1946, 153 F. 2d 1001, 1005, and other cases cited in defendants' memorandum.

9. In Taylor v. Stanley Co. of America, the court said at page 553 of 305 Pa., at page 158 of 158A:
 "The general rule is well stated in 13 C.J. 290: 'If it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed on, and that a part of the mutual understanding is that a written contract embodying these terms shall be drawn

and executed by the respective parties, this is an obligatory agreement, which dates from the making of the oral agreement and not from the date of the subsequent writing.' "
 The Ketchum case contains this language at page 229 of 309 Pa., at page 535 of 163A:
 "In law, because where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though one of the parties thereafter refuses to execute the written contract. Schermer v. Wilmart, 282 Pa. 55, 58, 127 A. 315; Taylor v. Stanley Co. of America, 305 Pa. 546, 158 A. 157."
 In the Mezza case, the court said at page 220 of 161 Pa.Super., at page 838 of 53 A.2d:
 " * * * where the parties so intend, an oral agreement may be binding even though they agreed that it should be later reduced to writing."

and plaintiffs are bound to execute appropriate releases, as well as have these actions marked dismissed with prejudice. There is no evidence whatever that the parties intended a writing to be executed containing all these settlement terms and no such writing, other than the correspondence saying the cases were settled (P–3), was prepared in any of the other eight cases.[10] The releases used did not mention the exact consideration but the nominal $1 was recited. The defendants are willing to accept a release without the words considered objectionable by plaintiffs, so that there is no need to decide what is an appropriate release as contemplated by the oral settlement agreement. Plaintiffs cannot avoid such a settlement agreement on the ground that they do not like a release which defendants are willing even to execute in a form exactly as desired by plaintiffs (N.T. 97–99).[11] See McKenzie v. Boorhem, D.C.W.D.Ark.1954, 117 F.Supp. 433, 435–436, where the court said at page 436:

"The agreement was complete and binding at that time, and the fact that the written agreement tendered to Boorhem for signing might not have conformed to the oral settlement agreement would not in any wise affect the validity of said oral agreement."

▇ Oral settlement agreements are valid and enforcible in Pennsylvania. Woodbridge v. Hall, 1950, 366 Pa. 46, 76 A.2d 205; Scranton Gas & Water Co. v. Weston, 1914, 57 Pa.Super. 355.[12]

This makes it unnecessary to consider many other matters argued by counsel, such as the existence on May 23 of a settlement of all ten cases and the validity of the purported assignment (P–12) of these causes of action in late July or early August 1960 to the purchaser of the assets of these corporations. Cf. § 542 of the Restatement of Contracts.

### Conclusions of Law.

1. The court has jurisdiction of the subject matter and of the parties.

2. These cases were settled by agreement of the parties in May 1960, providing for payment of $10,000 by defendants and the execution of releases by plaintiffs.

3. The defendants shall pay $10,000 into the registry of this court ($5,000 in each of the above cases), which shall be paid to plaintiffs upon execution of re-

---

10. See 8 Pa.L.Ency. § 30, where the rule is stated as follows at pp. 43 & 44:

"Legal obligations, however, can arise out of a contract whose terms are definitely agreed upon, notwithstanding that the parties understood that a formal contract was subsequently to be executed, and where the parties agree orally to all the terms of a contract between them and part of their mutual understanding is that a written contract embodying such terms shall be drawn and executed by them, the oral contract may be enforced, even though one of the parties thereafter refuses to execute it. Moreover, even though the parties to an oral agreement contemplate that it is to. be reduced to writing and signed, if the understanding is that this is to be done simply as a memorial of the agreement, the contract is binding, notwithstanding that it is never put to writing, and such a contract is obligatory from the date of the making of the oral agreement."

11. The reason given by plaintiffs' authorized officer for assigning these law suits (P–12) is stated as follows:

"I believe that I figured that I might gamble and maybe I in the long run would reap richer rewards.
* * * * *
"Q. And you decided to gamble on recovering more by that agreement than you would have received if you had made the settlement for your corporations at $10,000, is that right? A. Yes, sir."
The purported assignee of the causes of action (P–12) had no objection to the release if it would not restrict his ability to change the runs (N.T. 141 & 172) and there is no such restriction with the first 2½ lines of Section 3 removed. As pointed out in footnote 5 above, the release as submitted appears to have been in the usual form.

12. The letter of May 23, 1960 (Exhibit P–3), together with the statement to the court on that date, is a sufficient compliance with Local Rule 13. Cf. pp. 51–52 of Document No. 79 in C.A. 19288.

leases as of May 23, 1960, in the form attached as Exhibit A to the Petitions for Dismissal with these words eliminated from the first 2½ lines of Section 3: "agrees that its present availability and the present procedure pursuant to which it licenses motion pictures is reasonable, and".

4. On payment of the above amounts into the registry of the court, orders shall be entered dismissing the actions with prejudice.

Appropriate orders will be entered.[13]

13. The briefs and memoranda of counsel have been placed in file Civil Action No. 24983 as Documents Nos. 20 to 23.