84

Wallace **GOOD**
v.
**PENNSYLVANIA RAILROAD CO.**
Civ. A. No. 27690.

United States District Court
E. D. Pennsylvania.
Jan. 19, 1967.

Robert M. Ross, for plaintiff.

Matthew J. Broderick, Philadelphia, Pa., for defendant.

OPINION

JOHN MORGAN DAVIS, District Judge.

This action was instituted by a railroad worker under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. to recover damages for injuries sustained from an on-the-job accident that occurred on May 27, 1959. The case went to trial and the jury returned a verdict for the plaintiff in the sum of $37,500.00.

The defendant filed motions for judgment non obstante veredicto and in the alternative for a new trial. After argument, the court entered orders on July 5 and 12, 1966 denying the motion for judgment n. o. v. but granting a limited motion for a new trial. On August 4, the plaintiff petitioned for reargument under Local Rule 34. This motion was granted on September 12, and reargument was had on November 7.

We now have before us for reconsideration the defendant's motions for judgment non obstante veredicto and in the alternative for a new trial. In support of its motion for judgment n. o. v., it contends that prior to trial, its attorney and the attorney for the plaintiff entered into a valid and binding settle-

ment, thus extinguishing the plaintiff's cause of action and precluding any further adjudication of the claim.

The undisputed facts indicate that the case was assigned for trial before the undersigned on March 5, 1964. On that day and in our presence, settlement discussions were entered into by counsel. The defendant offered $15,000 in settlement and the plaintiff's counsel accepted on the following day. Counsel for the plaintiff notified the office of the Clerk of the District Court that the case had been settled.

The plaintiff, however, refused to execute the releases when they were forwarded to him. In light of that development, his counsel made a motion in December 1964 to have the case restored to the civil jury list. That motion was granted with leave to defendant to file an amended answer to the complaint. The defendant then set forth the defense of settlement, accord, and estoppel and, on March 5, 1965, filed a motion for summary judgment. This motion was argued when the case was assigned for trial for the second time before the undersigned on April 12, 1965. The Court denied the motion and allowed the case to proceed to trial. The question now presented is whether we erred.

The requests for admissions submitted by the defendant to the plaintiff's counsel reveal the following:

> *Request No. 3:* "That on March 5, 1964 in settlement of this case defendant offered the sum of $15,000 and this offer was accepted by counsel for plaintiff pursuant to authorization received from plaintiff."

> *Answer:* "Admitted that defendant offered the sum of $15,000.00 on March 5, 1964, and it is also admitted that plaintiff's counsel on the evening of March 5, 1964 communicated acceptance of said offer to counsel for defendant, pursuant to authorization received by plaintiff's counsel from plaintiff on the evening of March 5,

1964. Counsel for plaintiff notified the District Clerk's Office of the settlement on the morning of March 6, 1964.

> *Request No. 4:* "That counsel for the plaintiff had full authority to enter into settlement discussions, negotiate a settlement, and accept defendant's settlement offer on behalf of plaintiff.

> *Answer:* "Plaintiff's counsel admits that he had full authority to settle this case on the evening of March 5, 1964, at which time he communicated acceptance of defendant's offer to counsel for defendant. Plaintiff's counsel further admits that he had full authority to settle this case at the time he notified the District Clerk's office of the settlement on the morning of March 6, 1964. Plaintiff, Wallace Good, personally claims the authority to settle this case was withdrawn on the evening of March 6, 1964 in a telephone call to plaintiff's counsel.[1] Plaintiff's counsel never understood that said telephone call was to act as a revocation of the settlement agreement. The telephone conversation between plaintiff and his counsel involved a discussion of the extent of plaintiff's railroad retirement benefits and the settlement of the instant action did not form a part of the discussion."

In the case at bar, there is no allegation of fraud, mutual mistake, or lack or inadequacy of consideration making the contract unconscionable or against the policy and purpose of the F.E.L.A. The plaintiff contends instead that the settlement did not constitute a binding contract because his acceptance of the defendant's offer was only part of the consideration demanded by defendant, the other part being plaintiff's signed release.

The Supreme Court has held on at least two occasions that the validity of a release in an F.E.L.A. case is governed by federal and not state law. May-

---

1. We see no relevance to the fact that the authority to settle was revoked *after* the attorneys had entered into the settlement agreement.

nard v. Durham & Southern Railway, 365 U.S. 160, 81 S.Ct. 561, 5 L.Ed.2d 486 (1961); Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 378 (1952). In *Dice,* the Ohio Supreme Court had required the application of strict standards of proof to show fraud in obtaining a release in an F.E.L.A. case. In reversing the state court the United States Supreme Court stated, at p. 361, 72 S.Ct. at p. 314:

> "Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act."

The Court also asserted at p. 362, 72 S.Ct. at p. 314:

> "Application of so harsh a rule to defeat a railroad employee's claim is wholly incongruous with the general policy of the Act to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers. And this Ohio rule is out of harmony with modern judicial and legislative practice to relieve injured persons from the effect of releases fraudulently obtained."

In this case we shall look to Pennsylvania law as a guide for our decision on the merits as we find it neither "incongruous with the general policy of the Act" nor "out of harmony with modern judicial and legislative practice." See Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 298 F.2d 801 (3d Cir. 1962) (see note 1 of Court's Opinion by Hastie, C. J.). The law of this forum, as stated in Ketchum v. Conneaut Lake Co., 309 Pa. 224, 229, 163 A. 534, 535 (1932) provides:

> "where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though

one of the parties thereafter refuses to execute the written contract."

See also, Main Lines Theatres, Inc. v. Paramount Film Distributing Corp., 189 F.Supp. 314 (E.D.Pa.1960), aff'd 298 F.2d 801 (3d Cir. 1962); Taylor v. Stanley Co. of America, 305 Pa. 546, 158 A. 157 (1932); Mezza v. Beiletti, 161 Pa.Super. 213, 53 A.2d 835 (1947); Restatement, Contracts § 26.

The plaintiff, however, relies on Meier v. Texas Co., 168 F.Supp. 119 (E.D.Pa. 1958) which involved a claim by a seaman for damages for personal injuries. His counsel notified the defendant that he would settle for $600.00, and the defendant agreed to this figure. The plaintiff subsequently signed the release but did not receive the $600.00 at that time. The check, made payable to plaintiff and his counsel jointly, was later mailed, but he did not receive it for several months because he was out to sea. When he returned he refused to accept the check and denied the validity of the settlement because he learned that his condition was much more serious than he had realized when he signed the release. The court held that since counsel for the plaintiff had requested that the check be made payable to counsel alone but the defendant had made it payable to counsel and the plaintiff jointly, the defendant thereby demonstrated its intention to require the plaintiff's endorsement as a condition precedent to the settlement.

In his brief on reargument, the plaintiff cited us to Lamont v. The Pennsylvania Railroad, No. 148, C.P.No. 3, No. 389, C.P.No. 4, and No. 299, C.P.No. 7, December Term, 1960 (C.P.Philadelphia County 1966) which was decided by President Judge Hagan on July 26, 1966, subsequent to our orders of July 5 and 12, 1966. There, in a F.E.L.A. case, counsel for both plaintiff and defendant had agreed on a settlement figure at a court settlement conference. Defendant's counsel then forwarded to plaintiff's counsel a release to be executed by plaintiff. The accompanying letter stated that a draft would be sent upon

receipt of a short certificate, an order of court approving the settlement, an order to mark the case settled, discontinued, and ended, and the executed release. The plaintiff refused to accept the settlement and never returned the requested papers. The defendant then filed a motion to have the case marked settled and discontinued. Citing *Meier,* supra, the court held that no binding settlement contract had been entered into because the defendant conditioned the payment of the draft upon the receipt of various documents listed in his letter to the plaintiff's counsel.

The case at bar is similar to the two mentioned above. There had been an oral agreement between counsel concerning a settlement. Moreover, the railroad had sent a letter to plaintiff's counsel setting forth its request for certain documents and stating that it would send the company's draft upon receipt of them.[2]

The plaintiff argues with some force that the defendant would not have sent the draft unless it received the signed release and other papers. However, that is not the real issue before us, for we all know that a party out of an abundance of caution may want an oral agreement reduced to writing before parting with a large sum of money even though the oral bargain is enforceable.

The issue more properly would be whether the plaintiff could have enforced the agreement if the railroad had attempted to renege prior to the signing of the formal release and the receipt of the other papers.

We candidly admit that this problem is not without difficulties, for, as so often happens, the parties never specifically articulated any provisions to cover the situation now before us. The *Meier* and *Lamont* cases have stated that the oral agreement between counsel would not be sufficient and that the signing of a release in *Lamont* and the plaintiff's endorsement on the check in *Meier* were necessary conditions precedent to defendant's performance. With a broad reading of these two cases, we would have little problem in saying that no settlement contract had been consummated here.

However, we are also faced with the case of Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 189 F. Supp. 314 (E.D.Pa.1960) aff'd 298 F.2d 801 (3d Cir. 1962), cert. denied 370 U. S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962) where the court had before it the validity of a settlement between parties in private anti-trust cases. Counsel for plaintiff had been authorized to settle two out of a number of these anti-trust cases for a total of $10,000.00. Defendants notified plaintiffs that the sum was acceptable and then forwarded the customary releases. Subsequently, plaintiffs announced that they were not satisfied with certain provisions of the release and that they would not settle the litigation. The District Court held that the oral agreement was binding. Relying on Pennsylvania law, the Court of Appeals affirmed on the grounds that the $10,000 was in settlement of all claims against the defendant and that the subsequent failure to sign the releases did not affect the validity of the settlement. It asserted:

"There was no formal offer and no formal acceptance. Neither was there a written settlement agreement. But the record warranted a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation for $10,-000."[3]

We can find no distinguishing feature between *Meier* and *Lamont* on the one hand and *Main Line Theatres* on the other. All three cases involved an original oral agreement to be followed by a written release. We have no reason to believe that the defendants in *Main Line Theatres* would have parted any more

2. Counsel for the railroad admitted that such a letter was sent to the plaintiff's attorney. The letter will be docketed with the other papers in this case.

3. Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 298 F.2d 801, 802 fn. 1 (3d Cir. 1962).

readily with their money before the releases were signed than the defendants in the other cases.

The plaintiff relies on the fact that *Meier* and *Lamont* concerned injuries to a seaman and railroad worker respectively while the other case involved a lawsuit between two impersonal corporations. First of all, we know of no rule of contract law that distinguishes between corporations and individuals in this fashion. Secondly, the plaintiff in each of those cases was represented by one of the most competent law firms in the City of Philadelphia so that we do not have a situation where one party took undue advantage of an unsophisticated litigant.

In our case, the answers to the defendant's request for admissions state that the plaintiff's attorney had received specific authorization from the plaintiff on the evening of March 5, 1964 to settle the case for $15,000 and that acceptance was communicated to defendant's counsel that same evening. Counsel for plaintiff also notified the Clerk's office of the settlement. These facts indicate strongly that the formal release was not to be a condition precedent but rather a memorial of the oral agreement. See *Ketchum,* supra. Furthermore, we do not believe that any court would have permitted the defendant to renege at this point against the wishes of the plaintiff.

We find nothing unconscionable or contrary to the policy of the Federal Employers' Liability Act in holding the plaintiff to his bargain under the circumstances presented here. Moreover, to the extent that the *Meier, Lamont* and *Main Line Theatres* are in conflict, we have no alternative but to follow *Main Line Theatres,* a decision by the Court of Appeals of this Circuit.

Pursuant to Rule 50(c) of the Federal Rules of Civil Procedure, we must also rule conditionally on the defendant's alternative motion for a new trial. After much deliberation, we conclude that we erred in refusing the defendant's motion for a continuance when we permitted the plaintiff to amend his complaint during trial to allege injury to his "groin and testicles." The defendant was particularly prejudiced here since this court several months prior to trial had denied the plaintiff's motion. See Newman v. Zinn, 164 F.2d 558 (3d Cir. 1947); 3 Moore, Federal Practice § 15.14. See also Kline v. S. M. Flickinger, 314 F.2d 464 (3d Cir. 1963). Consequently, we would grant the defendant's motion for a new trial and would allow both parties to obtain experts on the issue so that it might be presented fully and completely.